A03A1162. MON AMI INTERNATIONAL, INC. et al. v. GALE et al.
(592 SE2d 83)

RUFFIN, Presiding Judge.

Kenneth Gale, individually and in his capacity as executor of his wife's estate, sued Mon Ami International, Inc. ("Mon Ami"), its parent company, president, and lawyer to enforce an amendment to an employment agreement that he contends gave his wife, Mrs. Gale, ten percent of Mon Ami's stock. Gale also sought damages for breach of a fiduciary duty.[1] Following a trial, the jury concluded that Mrs. Gale did not own the stock and found no breach of fiduciary duty. The trial court disagreed, however, and granted Gale's motion for new trial. Prior to retrial, the court granted Gale's motion in limine,

---

[1] Gale raised numerous other claims, none of which is germane to this appeal.

preventing Mon Ami "from presenting any evidence on the issue of whether [Mrs.] Gale was a 10% shareholder."[2] After retrial, the jury determined that Mon Ami breached its fiduciary duty to Mrs. Gale as a minority shareholder.

On appeal, Mon Ami asserts that the trial court erred in granting Gale's motion in limine, which essentially precluded the company from challenging the stock ownership issue. Mon Ami also contends that the trial court erred in failing to direct a verdict in its favor on both the stock ownership and breach of fiduciary duty claims. Finally, Mon Ami argues that the trial court abused its discretion in denying its motion for mistrial. For reasons that follow, we reverse.

1. As a threshold matter, we must address whether the trial court properly granted Gale's motion in limine. "The admission of evidence, including a ruling on a motion in limine, is a matter resting within the sound discretion of the trial court, and we will not disturb the exercise of that discretion absent evidence of its abuse."[3]

The relevant facts show that Mon Ami employed Mrs. Gale in May 1992. Pursuant to an employment contract drafted by Mrs. Gale, she was "authorized to purchase at least five percent . . . of the total amount of the shares of stock" at a cost of $1 per share after Mon Ami incorporated in Georgia. In February 1993, the parties signed an amendment to the employment agreement, which also was drafted by Mrs. Gale. This amendment provided, in pertinent part, that Mrs. Gale's "stock ownership . . . shall be increased from 5% to 10%."

During the first trial, Mon Ami presented evidence that Mrs. Gale never exercised her option to purchase stock under the original contract and thus never owned any stock in the company. Although the jury clearly agreed that Mrs. Gale owned no stock, the trial court disagreed. According to the trial court, the amendment to the contract, which constituted the last word of the parties on the subject of stock ownership, "unequivocally [stated] that Ms. Gale was a 10% shareholder of" Mon Ami. We disagree with the trial court.

"An issue of contract construction is usually a question of law for the court to resolve."[4] Accordingly, it is subject to de novo review.[5]

---

[2] In its order, the trial court contends that, during the first trial, it directed a verdict in Gale's favor on the issue of stock ownership. This contention is belied by the record, which shows that the jury resolved this issue in Mon Ami's favor. Although Gale moved for judgment notwithstanding the verdict, as well as for a new trial, the trial court granted only the motion for new trial.

[3] *Stewart v. Lanier Park Med. Office Bldg.*, 259 Ga. App. 898, 901 (3) (578 SE2d 572) (2003).

[4] *Nel v. DWP/Bates Technology*, 260 Ga. App. 426, 427 (1) (579 SE2d 842) (2003).

[5] See *Hill v. Centennial/Ashton Properties Corp.*, 254 Ga. App. 176, 177 (1) (561 SE2d 853) (2002).

The following three principles guide us in our construction of contracts:

> First, if no ambiguity appears, the . . . court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if [an] ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[6]

"The law favors a construction that will uphold the contract as a whole, and the entire contract should be read in arriving at the construction of any part."[7] Here, the amendment language at issue provides that Mrs. Gale's "stock ownership . . . shall be increased from 5% to 10%." The use of the words "stock ownership" suggests that Mrs. Gale owned five percent of Mon Ami's stock. However, in viewing the contract as a whole, the five percent in the amendment relates back to an *option* to purchase five percent of the company's stock, rather than actual ownership. If, as Mon Ami contends, Mrs. Gale never exercised her option to purchase stock, there would be nothing that could be increased. Ten percent of zero is still zero. Under these circumstances, the contract, as written, is ambiguous.

Moreover, the ambiguity cannot be resolved by the rules of contract construction. "The cardinal rule of contract construction is to ascertain the intention of the parties."[8] In this case, it is unclear whether the parties intended that the five percent in the amendment refer to the option to purchase, or whether the five percent referred to other stock that Mrs. Gale owned. During the first trial, Mon Ami presented evidence that it intended the amendment to increase only Mrs. Gale's option to purchase stock. Gale, however, argued that the company intended to transfer the stock outright to his wife. Such "[d]isagreement as to the intent of the parties is an evidentiary, factual matter for resolution by jury and not a matter of law for determination by the court."[9]

---

[6] (Punctuation omitted.) *Atlanta Development v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002).

[7] Id. at 478.

[8] (Punctuation omitted.) *Boland v. Ga. Eye Institute*, 235 Ga. App. 492, 494 (1) (509 SE2d 342) (1998).

[9] (Punctuation omitted.) *Atlanta Development*, supra at 479.

However, during the subsequent trial, the jury was prevented from issuing any factual findings on the issue of intent because the trial court's order purported to resolve the issue as a matter of law. As the issue was a matter for the jury, the trial court abused its discretion in limiting the evidence presented so as to exclude evidence of the parties' intent. Thus, the judgment must be reversed and the case remanded for a new trial.

2. In a separate enumeration of error, Mon Ami contends that, under the employment contract, it was entitled to a directed verdict in its favor on the stock ownership issue. Specifically, Mon Ami maintains that, "properly construed, the contract only granted Ms. Gale the right to purchase 10% of [its] stock." We disagree.

"A trial court is authorized to grant a directed verdict if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict."[10] For the reasons stated in Division 1, the contract is ambiguous. The contract could be read *either* as conveying an option to purchase ten percent of the stock *or* as transferring ownership of the stock. Given the existence of a factual issue requiring jury resolution, Mon Ami is not entitled to judgment as a matter of law on this basis.

Mon Ami also argues that the amended contract is too vague to be enforceable because it neither specifies which company's stock Mrs. Gale would own nor identifies when the ten percent ownership is to be calculated. "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon."[11] Here, assuming that the parties intended to transfer ten percent of the company's stock to Mrs. Gale, we agree with Gale that the contract can be enforced in this manner. The amendment, when read with the employment contract as a whole, shows that the stock to which the amendment refers is stock in "the Georgia Company," which is identified as Mon Ami. Furthermore, the ten percent figure is sufficiently specific to be enforceable where, as here, the contract identifies the stock that is to be transferred.[12]

We are equally unpersuaded by Mon Ami's contention that the contract fails for lack of consideration. According to Mon Ami, the

---

[10] *Nguyen v. Lumbermens Mut. Ins. Cas. Co.*, 261 Ga. App. 553 (583 SE2d 220) (2003).

[11] (Punctuation omitted.) *Kueffer Crane &c. Svc. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000).

[12] See id. Cf. *Demer v. Capital City Cable*, 190 Ga. App. 40, 42-43 (2) (378 SE2d 162) (1989) (equity participation provision unenforceable where contract provided for transfer of "stock or stock equivalents," the evidence showed the company issued different types of stocks, and the plaintiff seeking to recover stock admitted that the parties contemplated future negotiations).

only consideration asserted for the transfer of stock was Mrs. Gale's continued employment through October 1993. Because Mrs. Gale died in March 1993, Mon Ami argues that she failed to render complete performance and that it is therefore justified in refusing to honor the agreement. However, "the adequacy of consideration must be tested by the facts and conditions existing at the time the contract was made."[13] As continued employment constitutes valid consideration,[14] this argument lacks merit. Accordingly, Mon Ami was not entitled to judgment as a matter of law on the contract claim.

3. Similarly, we are unable to conclude that Mon Ami is entitled to judgment as a matter of law on the breach of fiduciary duty claim. "Georgia law requires that officers and directors discharge their duties with due care in a manner they believe in good faith to be in the best interests of the corporation."[15] Moreover, "[a] fiduciary's duty of good faith prohibits him from appropriating for himself the assets and property of the corporation, to the exclusion of minority shareholders."[16]

Here, Gale contends that Mon Ami's actions in transferring the company's assets to another corporate entity without acknowledging Mrs. Gale's ownership of ten percent of the company's stock essentially divested her of any interest she had in Mon Ami. Contrary to Mon Ami's contention on appeal, such divesting of ownership can serve as the basis for a breach of fiduciary duty claim.[17]

Mon Ami also asserts that it is entitled to a directed verdict on the breach of fiduciary duty claim because Gale brought it as a direct action rather than a derivative suit. However, Mon Ami waived this assertion by failing to raise it before the trial court.[18] Assuming, for the sake of argument, that Mon Ami had preserved the issue, we nonetheless find its argument unavailing because the reasons for

---

[13] *Saine v. Clark*, 235 Ga. 279, 281 (2) (219 SE2d 407) (1975). See also *Guthrie v. Guthrie*, 259 Ga. App. 751, 753 (577 SE2d 832) (2003), cert. granted, Case No. S03G0915 (May 20, 2003).

[14] See *Murray County School Dist. v. Adams*, 218 Ga. App. 220, 221 (1) (461 SE2d 228) (1995).

[15] *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 289 (3) (b) (520 SE2d 517) (1999).

[16] (Punctuation omitted.) Id.

[17] See *Elliott v. McDaniel*, 224 Ga. App. 848, 853-854 (5) (483 SE2d 104) (1997) (improper ousting of minority shareholder constituted breach of fiduciary duty for which punitive damages could be awarded), rev'd on other grounds, *McDaniel v. Elliott*, 269 Ga. 262 (497 SE2d 786) (1998).

[18] See *Owens v. McGee & Oxford*, 238 Ga. App. 497, 500 (1) (d) (518 SE2d 699) (1999). In its reply brief, Mon Ami contends that it raised the issue at trial by asserting that the minority shareholder must demonstrate that he or she was "specially damaged" to sustain a claim. A review of the record, however, reveals that this statement was made in the context of an argument on damages, not on the propriety of a direct action. Thus, Mon Ami's contention is belied by the record.

requiring a derivative suit simply are not present in this case.[19] It follows that the trial court did not err in failing to direct a verdict on the breach of fiduciary duty claim.

4. Finally, Mon Ami asserts that the trial court erred in failing to grant a mistrial. The record indicates that Mrs. Gale was murdered while at Mon Ami's offices and that a co-worker was suspected of having committed the crime. Prior to trial, Mon Ami moved to exclude any evidence relating to the murder, and the trial court granted the motion. During opening statements, however, Gale's attorney referred to Mrs. Gale's murder, and Mon Ami objected and moved for a mistrial. The trial court noted that the reference to murder had been fleeting, at best, and denied the motion. The trial court subsequently instructed the jury that it was not to base its verdict on sympathy.

The decision to grant a mistrial rests within the sound discretion of the trial court, and we will not disturb that court's ruling absent manifest abuse.[20] "Moreover, unless it is apparent that a mistrial was essential to the preservation of the right to a fair trial, the discretion of the trial judge will not be interfered with."[21] Under these circumstances, we find no abuse of discretion in the trial court's denial of Mon Ami's motion for a mistrial.

*Judgment reversed and case remanded for a new trial. Smith, C. J., and Miller, J., concur.*

DECIDED OCTOBER 29, 2003 —
RECONSIDERATION DENIED DECEMBER 16, 2003 — 

*Ford & Harrison, John L. Monroe, Jr., F. Valerie Rusk*, for appellants.

*Albert A. Chapar, Jr.*, for appellees.

---

[19] See *Parks*, supra at 287 (2) (reasons for requiring a derivative suit include: preventing a multiplicity of suits; protecting corporate creditors and shareholders; and adequately compensating injured shareholders).
[20] See *Runion v. Hofer*, 245 Ga. App. 854, 856 (2) (538 SE2d 462) (2000).
[21] (Punctuation omitted.) Id. at 856-857.