A07A0498, A07A0499. L. LOWE & COMPANY, INC. v. SUNSET STRIP PROPERTIES, LLC; and vice versa.

(641 SE2d 797)

BLACKBURN, Presiding Judge.

In this breach of contract action associated with a construction project, plaintiff L. Lowe & Company, Inc. ("Lowe") in Case No. A07A0498 appeals the directed verdict granted in favor of defendant Sunset Strip Properties, LLC ("Sunset"), which directed verdict arose from Lowe's alleged failure to present evidence linking Sunset to the contract. We agree with the trial court and affirm. This decision moots Sunset's cross-appeal in Case No. A07A0499, in which Sunset appeals the trial court's denial of Sunset's pre-trial motion for partial summary judgment.

The procedural record reflects that Lowe filed suit against Sunset, alleging that Sunset had orally agreed to pay Lowe to improve a restaurant in Atlanta. Claiming Sunset then authorized Lowe to proceed, Lowe alleged that it commenced working on the project, furnishing $88,372 in materials, labor, and equipment for the improvement of the restaurant. When Sunset subsequently refused to pay, Lowe filed a lien on the property and brought this action, asserting claims of breach of contract, quantum meruit, enforcement of claim of lien, and attorney fees.

Following the presentation of Lowe's case, Sunset moved for a directed verdict on all claims on the ground that no evidence linked

---

[9] See *Cardwell, supra.*
[10] See *Gray, supra* at 751.

Sunset to any contract negotiations, notices, actions, or authorizations. The trial court agreed and granted a directed verdict in favor of Sunset. Lowe appeals.

> A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). A grant of directed verdict is a ruling that the evidence and all reasonable deductions therefrom demand a particular verdict.

(Punctuation and emphasis omitted.) *Carden v. Burckhalter.*[1] We review the record de novo, construing the evidence in favor of the nonmovant. *Jenkins v. Jenkins;*[2] *Carden,* supra, 214 Ga. App. at 488 (1) (b).

So construed, the evidence at trial showed that the person with whom Lowe negotiated the alleged construction contract was Jamie Masada. Lowe's president testified that Masada, a successful California businessman, was the owner of a company called "Laugh Factory." As a result of his negotiations with Masada, Lowe's president sent (through Masada's local Atlanta agent) a proposed contract to Masada, which contract was between Lowe as contractor and *Laugh Factory as owner* and which Lowe's president had already executed on behalf of Lowe; the contract further showed that Masada was to execute the contract *on behalf of Laugh Factory.* The contract provided that Lowe would partially demolish and reconstruct a defunct restaurant building to prepare it to accommodate a Laugh Factory restaurant with a stage.

Masada never executed or returned the contract. Nor was financial information about Laugh Factory provided to Lowe as required by the contract; however, Lowe independently determined that Laugh Factory and Masada were financially successful. When Masada's architect on the project gave Lowe a notice to proceed, Lowe understood and the architect represented that Masada had agreed to the contract's terms, and therefore Lowe commenced the improvements on the restaurant.

The architect testified that he had earlier negotiated an architect's contract with Masada and that he sent a proposed written contract memorializing such (already executed by the architect) to Masada for him to execute *on behalf of Laugh Factory.* Although

[1] *Carden v. Burckhalter,* 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994).
[2] *Jenkins v. Jenkins,* 281 Ga. App. 756, 759 (1) (637 SE2d 56) (2006).

Masada did not execute this contract, the architect received payment thereunder. Toward the end of negotiations with Lowe over the construction contract's price, the architect sent a proposal to Masada to be signed by Masada *on behalf of Laugh Factory* to authorize the commencement of construction. Masada never signed this proposal either. After Lowe began construction, the architect approved a request for payment to Lowe, which request was *directed and sent to Laugh Factory as owner* at its address in California. When no payment was forthcoming, Lowe sent a letter to Masada at the same California address demanding payment.

Thus, the evidence presented at trial consistently showed that Laugh Factory owned the property and that Masada was acting on behalf of Laugh Factory (or perhaps at times on his own behalf) in negotiating the construction contract. Significantly, nowhere in any of the above testimony nor in any of the referenced exhibits was there any mention of Sunset, the named defendant in this lawsuit later brought by Lowe. Rather, Lowe's entire focus demonstrated that either Masada or Laugh Factory agreed to the contract, owned the property, or authorized the commencement of construction. Indeed, Lowe in its appellate brief concludes that this evidence "clearly allows for the inference that Mr. Masada is the Owner" or "strongly demonstrate[s] that Mr. Masada was the Owner of the property or the Owner's representative." The only entity identified in the evidence as represented by Masada was his company Laugh Factory, the name of which appeared on all the relevant contracts or notices as the entity on whose behalf he was acting.

Not surprisingly, at the close of plaintiff's evidence, defendant Sunset, whose name had appeared nowhere in plaintiff's evidence, moved for a directed verdict. As an accommodation to Lowe, the court reopened the evidence to allow Lowe to submit its recorded claim of lien on the restaurant property and its recorded notice of filing an action to recover on the lien. Although these documents identified Sunset as the owner of the restaurant property and as the entity against which the action was filed, neither purported to establish any connection whatsoever between Sunset and either Masada or Laugh Factory. Contrary to Lowe's arguments, neither the trial testimony nor these documents purported to bridge the evidentiary gap that either Masada or Laugh Factory was acting on behalf of Sunset when they negotiated with Lowe. Cf. *Ellis v. Fuller*[3] (" '[w]here the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he or she was an agent of another party,

---

[3] *Ellis v. Fuller*, 282 Ga. App. 307, 309 (1) (638 SE2d 433) (2006).

such evidence has no probative value and is insufficient to authorize a finding that such agency exists' "). As no trial evidence showed that anyone purported to bind Sunset to or to notify Sunset of any of the obligations, actions, or negotiations with Lowe or the architect, we agree with the trial court that a directed verdict was demanded by the evidence.

Nevertheless, Lowe argues that a stipulation entered at trial obviated the need for such a showing. The parties orally stipulated that "with the exception of the timing issue, whether or not the lien was filed timely, all other statutory requirements have been met, including the notice provisions, including the notice of filing lawsuit and so forth." Because OCGA § 44-14-361 (b) requires (in pertinent part) that such liens are only valid if the labor, services, or materials provided at the property were furnished at the instance of the property owner or someone acting on his behalf, Lowe contends that by stipulating that "all other statutory requirements have been met," Sunset was stipulating that Lowe's labor, services, and materials were furnished at Sunset's request.

Having carefully reviewed the trial transcript, we can safely say that Lowe's argument ignores that the primary thrust and focus of the trial and testimony was to determine two factual issues: (i) whether Lowe's services were authorized by the owner, and (ii) whether the lien was timely filed. Most of the questioning explored whether Masada actually authorized the commencement of construction and whether his failure to execute any of the proposed contracts or notices showed his lack of agreement to the construction. Therefore, it would be anomalous indeed for Sunset to nonchalantly agree that this vigorously contested point was suddenly resolved by this innocuous stipulation, particularly where Sunset's questioning of the witness following the entry of this stipulation continued to challenge Lowe's authority to commence construction. More logical is that this stipulation referred to the notice requirements of the lien statute (see, e.g., OCGA § 44-14-361.1 (a)), which notices are specifically mentioned in the stipulation. We will not stretch the vague wording of the stipulation to mean more than what the parties in context clearly intended.

Accordingly, the trial court did not err in directing a verdict in favor of Sunset. This ruling moots Sunset's cross-appeal, which is therefore dismissed.

*Judgment affirmed in Case No. A07A0498. Appeal dismissed as moot in Case No. A07A0499. Ruffin and Miller, JJ., concur.*

DECIDED JANUARY 31, 2007.

*Smith, Currie & Hancock, Ramsey Kazem, Charles W. Surasky,* for appellant.

*Kenneth I. M. Behrman,* for appellee.