A08A2156, A08A2157. HILB, ROGAL & HAMILTON COMPANY OF ATLANTA, INC. v. HOLLEY; and vice versa.
(670 SE2d 874)

BLACKBURN, Presiding Judge.

In Case No. A08A2156, following a jury trial in a suit brought by Hilb, Rogal & Hamilton Company of Atlanta (HRH) against Hugh Holley (a former employee), HRH appeals the trial court's grant of a directed verdict to Hugh Holley with respect to a claim for unjust enrichment. Because HRH seeks to recover money it paid pursuant to an illegal contract, we affirm in that case. In Case No. A08A2157, Holley cross-appeals the trial court's denial of his motions for a directed verdict and judgment notwithstanding the verdict (j.n.o.v.) and challenges the damages awarded to HRH for its breach of

fiduciary duty claim. Because the evidence supported the jury's award, we affirm in that case also.

These post-trial appeals arise from a dispute over an employment contract between Holley and HRH, and the cases share a procedural and factual background with an earlier, pre-trial appeal to this Court. In August 1997, HRH (a large insurance brokerage) bought Holley's independent insurance brokerage, and Holley became a vice president of HRH. Pursuant to his employment agreement with HRH, Holley earned a salary and certain bonuses in exchange for selling professional liability insurance to clients needing specialized engineering or architecture policies. The employment agreement contained covenants not to compete with HRH in the event that Holley's employment with HRH terminated.

In February 2003, Holley resigned from HRH and began working for another insurance brokerage the following business day. HRH sued Holley for, inter alia, breach of contract, unjust enrichment, and breach of fiduciary duty. After Holley successfully moved for summary judgment on the ground that the restrictive covenant was overly broad and unenforceable, this Court (in the prior appeal) affirmed that ruling and held that HRH could not pursue its breach of contract claim based on Holley's alleged breach of the restrictive covenants. See *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*.[1]

### Case No. A08A2156

Case No. A08A2156 arises from the continuation of HRH's claim for unjust enrichment based on HRH's argument that Holley was unjustly enriched by the separate consideration paid to him in exchange for the unenforceable covenant not to compete. Under Holley's employment agreement, Holley was paid (in addition to his salary and bonuses) a separate amount specifically listed as consideration for his agreement not to compete with HRH upon termination. At the close of the evidence at trial, the trial court granted Holley's motion for a directed verdict as to the unjust enrichment claim. The jury ultimately awarded HRH $28,720 in damages for its breach of fiduciary duty claim.

1. HRH now contends that the trial court erred in granting Holley's motion for a directed verdict as to the unjust enrichment claim. We hold that, in light of the illegal contract entered into by

---

[1] *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 284 Ga. App. 591, 596 (1) (644 SE2d 862) (2007). That case also held that a factual dispute as to the mutual benefits received by the parties precluded summary judgment on HRH's unjust enrichment claim.

HRH, the trial court was correct not to invoke its equitable power and to instead leave HRH as it stood.[2] We therefore affirm the directed verdict as to HRH's unjust enrichment claim.

> A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. A grant of directed verdict is a ruling that the evidence and all reasonable deductions therefrom demand a particular verdict. We review the record de novo, construing the evidence in favor of the nonmovant.

(Citation and punctuation omitted.) *L. Lowe & Co. v. Sunset Strip Properties.*[3]

Here, the issue turns on the ability of a party to seek equitable relief (i.e., by bringing a claim for unjust enrichment) where that party has entered into a contract for an illegal purpose. The employment contract HRH executed sought to restrict Holley from even "accept[ing] an entreaty from" any known or prospective customers. As held by the trial court and affirmed in this Court, this overly broad restriction was unenforceable as an illegal restraint of trade. See, e.g., *Orkin Exterminating Co. v. Walker.*[4]

HRH now seeks to recover the money it paid pursuant to this illegal contract. However, our Supreme Court has stated that "[i]f [an] illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money." (Punctuation omitted.) *Hanley v. Savannah Bank & Trust Co.*[5] See *Payne v. Jones.*[6] This stems from the rule that if an illegal "contract is executed it will be left to stand; if it be executory neither party can enforce it." (Punctuation omitted.) *Minor v. McDaniel.*[7] "The law will leave the parties where they place themselves, not for the sake of the defendant, but for the law's sake, and that only." (Punctuation

---

[2] We recognize that, in directing the verdict for HRH, the trial court did not rule on this basis. But we will affirm a judgment "entered pursuant to the granting of a directed verdict [if it] is right for any reason." (Punctuation omitted.) *Looney v. M-Squared, Inc.*, 262 Ga. App. 499, 505 (6), n. 18 (586 SE2d 44) (2003).

[3] *L. Lowe & Co. v. Sunset Strip Properties*, 283 Ga. App. 357, 358 (641 SE2d 797) (2007).

[4] *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (b) (307 SE2d 914) (1983).

[5] *Hanley v. Savannah Bank & Trust Co.*, 208 Ga. 585, 587 (68 SE2d 581) (1952). Though not apparently focused on in the prior motion for summary judgment, which addressed existing factual disputes and the existence of a contract, this rationale was argued to the trial court prior to this appeal.

[6] *Payne v. Jones*, 211 Ga. 322, 325 (1) (86 SE2d 3) (1955).

[7] *Minor v. McDaniel*, 210 Ga. App. 146, 147 (435 SE2d 508) (1993).

omitted.) *Dorsett v. Garrard*.[8]

This is particularly appropriate where, as here, the party seeking equitable relief is the party who sought to benefit from the illegal contract, i.e., the illegal restraint of trade. Therefore, as HRH's unjust enrichment claim ultimately sought equitable relief based on a failed attempt to do that which our law forbids, we see no reason to depart from the rule that courts will leave parties to an illegal contract where they stand. See *Hanley v. Savannah Bank & Trust Co.*, supra, 208 Ga. at 587; *Payne v. Jones*, supra, 211 Ga. at 325 (1); *Jones v. Faulkner*.[9] Therefore, applying this rule here, we conclude that the trial court did not err in preventing HRH from pursuing the equitable remedy of unjust enrichment after entering into an illegal contract.[10]

## Case No. A08A2157

2. In the cross-appeal, Holley contends that the trial court erred by denying his motions for a directed verdict and j.n.o.v. as to HRH's breach of fiduciary duty claim, in that HRH failed to prove that Holley violated any duty owed to HRH. We disagree.

> In reviewing the denial of a motion for judgment notwithstanding the verdict, this Court must determine whether there is any evidence to support the jury's verdict. The same standard of review applies from the denial of a motion for directed verdict. . . . We must construe the evidence in the light most favorable to the prevailing party, to determine whether the elements of [the claims alleged by HRH] have been proven.

(Citations omitted.) *Ga. Power Co. v. Irvin*.[11]

The resolution of Holley's contention turns on the extent to which the evidence showed that Holley was disloyal to HRH during his employment with HRH. We first examine what duty, if any, was owed by Holley to HRH. It is undisputed that Holley was a vice president at HRH. "It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its

---

[8] *Dorsett v. Garrard*, 85 Ga. 734, 738 (1) (11 SE 768) (1890).

[9] *Jones v. Faulkner*, 101 Ga. App. 547, 549 (114 SE2d 542) (1960).

[10] We find this case distinct from *McCondichie v. Groover*, 261 Ga. App. 784, 786 (4) (584 SE2d 57) (2003), which addressed an illegal contract over a deposit to be used for an illegal stock purchase. There, it was never understood by the parties that the person to whom the money was deposited would be entitled to keep the deposit.

[11] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997).

58

shareholders, and are held to the standard of utmost good faith and loyalty." *Quinn v. Cardiovascular Physicians, P.C.*[12] As a corporate officer of HRH, Holley had a duty to HRH not to solicit clients on behalf of himself or another competitor during his tenure.

> [A] corporate officer does not breach fiduciary duties owed to the corporation simply by making plans to start a competing company while still employed by the corporation. Even before termination of employment, an officer is entitled to make arrangements to compete. . . . *But during the term of employment with the corporation, the officer may not solicit customers for a competing company or otherwise engage in direct competition with the corporation's business.*

(Citations and punctuation omitted; emphasis supplied.) *Gresham & Assoc. v. Strianese.*[13] See also *Elliott v. McDaniel*[14] (holding vice president to be a fiduciary).

Likewise, with respect to Holley's status as an employee of HRH, there was evidence that Holley had authority to solicit business on HRH's behalf and to bind HRH for certain obligations. Therefore (as instructed without objection), "the evidence would authorize a finding that [Holley was an agent and] owed fiduciary obligations to" HRH. *Nilan's Alley v. Ginsburg.*[15] See also *Tronitec, Inc. v. Shealy*[16] ("an employee who may bind his employer does have a fiduciary duty to his employer"). Accordingly,

> although [Holley] breache[d] no fiduciary duty to the employer simply by making plans to enter a competing business while he [was] still employed, he [was] not entitled to solicit customers for a rival business before the end of his employment nor [could] he properly do other similar acts in direct competition with the employer's business.

(Punctuation omitted.) *White v. Shamrock Bldg. Systems.*[17] See *Vernon Library Supplies v. Ard;*[18] *E. D. Lacey Mills v. Keith.*[19]

---

[12] *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 217 (2) (326 SE2d 460) (1985).

[13] *Gresham & Assoc. v. Strianese*, 265 Ga. App. 559, 560-561 (1) (a) (595 SE2d 82) (2004).

[14] *Elliott v. McDaniel*, 224 Ga. App. 848, 851 (2) (483 SE2d 104) (1996), rev'd on other grounds, *McDaniel v. Elliott*, 269 Ga. 262, 265 (3) (497 SE2d 786) (1998).

[15] *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1) (430 SE2d 368) (1993).

[16] *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 452 (8) (547 SE2d 749) (2001), overruled on other grounds, *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 431 (614 SE2d 758) (2005).

[17] *White v. Shamrock Bldg. Systems*, 294 Ga. App. 340, 346 (4) (669 SE2d 168) (2008).

[18] *Vernon Library Supplies v. Ard*, 249 Ga. App. 853, 855 (3) (550 SE2d 108) (2001).

[19] *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 363 (9) (359 SE2d 148) (1987).

Here, the evidence at trial showed that Holley, approximately two months before he resigned from HRH, sought and obtained approval from an existing or potential client to appoint him as the client's contact at the competitor's brokerage for whom he began working on the first business day after his resignation. During the same time period, Holley had established an e-mail account and telephone number at the competitor's brokerage and had printed conference invitations listing him as an employee of the competitor. Holley also provided price benchmarking information to the competitor, and offered to share "a technique or two" about how to reduce certain premiums for clients. Finally, Holley offered information to the competitor about a potential broker acquisition prospect. None of these activities was disclosed to or condoned by HRH. In light of this evidence, the jury was authorized to conclude that Holley violated his duty to HRH, and the trial court did not err in denying Holley's motions for directed verdict and j.n.o.v.

3. Holley also contends that the trial court erred in denying his motion for remittitur as to the amount of the jury's damage award. We disagree.

> The question of damages is ordinarily one for the jury, and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case. A trial court's approval of a jury verdict as to damages, moreover, creates a presumption of correctness that cannot be disturbed on appeal absent compelling evidence, and a reviewing court is powerless to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.

(Punctuation and footnote omitted.) *First Southern Bank v. C & F Svcs.*[20]

Here, the jury found that Holley violated his duty to HRH and that HRH was entitled to nominal damages of $28,720, which was equivalent to the last two months of Holley's salary. In light of the unenforceable covenant not to compete and the evidence of Holley's disloyalty to HRH during the last two months of his employment there, we cannot say that the jury's award of two months of salary was so inadequate or excessive as to be inconsistent with the

---

[20] *First Southern Bank v. C & F Svcs.*, 290 Ga. App. 305, 306 (2) (659 SE2d 707) (2008).

preponderance of the evidence in this case.[21]

Moreover, the fact that the jury classified the $28,720 award as nominal is not cause for reversal.

> [I]n Georgia, the term "nominal damages" is purely relative, and carries with it no suggestion of certainty as to amount. Instead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely. In some cases a very small amount might constitute the trivial sum contemplated by the term "nominal damages"; in others a much larger amount might measure down to the same standard of triviality. And even though a verdict for nominal damages may be apparently large in its amount, it cannot be set aside simply because the amount is large, absent evidence of prejudice or bias in any incident at trial or a mistake on the part of the jury.

(Citations and punctuation omitted.) *Wright v. Wilcox*[22] (rejecting argument that nominal damages award of $22,000 was excessive as a matter of law). Cf. *MTW Investment Co. v. Alcovy Properties*[23] Therefore, as the evidence supported the amount arrived at by the jury, and the record discloses no prejudice or bias, we discern no error.

*Judgments affirmed. Miller and Ellington, JJ., concur.*

DECIDED DECEMBER 2, 2008.

*Fisher & Phillips, James M. Hux, Jr., Darren T. Horvath*, for appellant.

*Nelson, Mullins, Riley & Scarborough, Matthew T. Gomes, Stephen W. Mooney*, for appellee.

---

[21] There was evidence that Holley generated several hundred thousand dollars of revenue for HRH before he left, and there was evidence that Holley generated a similar amount for the competitor after he left HRH.

[22] *Wright v. Wilcox*, 262 Ga. App. 659, 663 (2) (586 SE2d 364) (2003).

[23] *MTW Investment Co. v. Alcovy Properties*, 273 Ga. App. 830, 832-833 (2) (616 SE2d 166) (2005).