**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 16, 2017**

# In the Court of Appeals of Georgia

A17A0004. USSERY v. GOODRICH RESTORATION, INC.

MILLER, Presiding Judge.

In this contractual dispute, defendant Warren Ussery appeals the final judgment entered in favor of plaintiff Goodrich Restoration, Inc. d/b/a Servpro of Macon East-West ("Servpro") on: (i) Ussery's counterclaims for return of funds paid and for a violation of the Fair Business Practices Act ("FBPA"), OCGA § 10-1-390 et seq., and (ii) his request for attorney fees. Ussery contends on appeal that the trial court erred in three ways: (i) by misinterpreting OCGA § 43-41-17 (b) when it found that he could not recover for funds he paid to Servpro for general contracting services it provided without the necessary license; (ii) by denying relief on his FBPA claim; and (iii) by denying his request for attorney fees. For the reasons that follow, we affirm.

Where, as here, an appeal is filed from the entry of judgment following a bench trial, "we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them." (Citation and punctuation omitted.) *Central Mtg. Co. v. Humphrey*, 328 Ga. App. 474, 475 (759 SE2d 896) (2014).

The material facts in this case are undisputed. After a fire damaged Ussery's home in 2011, he and his insurance company arranged for Servpro to provide cleanup and restoration services. Following a disagreement between the parties, Ussery terminated those services. Servpro then sued Ussery, seeking: (i) damages for breach of contract and quantum meruit/unjust enrichment, in the amount of $27,421.57; and (ii) to foreclose on a lien it had recorded against Ussery's home. Ussery raised several counterclaims against Servpro, including an FBPA claim and a claim for return of funds he paid to Servpro, which was premised on the proposition that his agreement with Servpro was illegal because Servpro had violated OCGA § 43-41-17 by acting as a general contractor without a license.

After the trial court granted summary judgment to Servpro on several of Ussery's counterclaims, Servpro dismissed all of its claims against him. The parties

then proceeded to a bench trial on Ussery's remaining counterclaims, each of which the trial court denied. This appeal followed.

1. Ussery first challenges the denial of relief on his claim under OCGA § 43-41-17 (b) for a return of funds he paid to Servpro. He contends that the trial court erred in ruling that, because Servpro did not realize a profit from its dealings with him, it is not required to return the funds he paid to it. We discern no error.

The interpretation of a statute is a question of law, which we review de novo. *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). Thus,

> [t]he cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly (OCGA § 1-3-1), and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else. Absent clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings.

(Citation and punctuation omitted.) *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015).

Initially enacted in 2004, see Ga. L. 2004, pp. 786, 810, § 1, the statute at issue here, OCGA § 43-41-17 (b), provides, in relevant part:

> As a matter of public policy, any contract entered into on or after July 1, 2008, for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter shall be unenforceable in law or in equity by the unlicensed contractor. . . . Notwithstanding any other provision of law to the contrary, if a contract is rendered unenforceable under this subsection, no lien or bond claim shall exist in favor of the unlicensed contractor for any labor, services, or materials provided under the contract or any amendment thereto. This subsection shall not affect the rights of parties other than the unlicensed contractor to enforce contract, lien, or bond remedies.

In enacting this statute, our legislature explained:

It is the intent of the General Assembly, in the interest of public health, safety, and welfare, to safeguard homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, and unsafe residential and general contractors. The practice of residential and general contracting is declared to be a business or

4

profession affecting the public interest and this chapter shall be liberally construed so as to accomplish the intent and purposes stated in this Code section.

OCGA § 43-41-1.

The parties do not dispute that Servpro was not a licensed general contractor when it provided the general contracting services underlying this action and that, as a result, any agreement Servpro may have had with Ussery is unenforceable under § 43-41-17 (b). It is an open question, however, as to what civil remedy is available for a violation of that statute. Neither party has cited, and we have not found, any authorities applying § 43-41-17 (b) to a civil claim by an unlicensed general contractor's client for return of funds paid.

The plain language of the statute bars an unlicensed general contractor from enforcing a contract "for the performance of work for which a residential contractor or general contractor license is required." OCGA § 43-41-17 (b). It does not, by its terms, address the means by which an unlicensed general contractor's client may seek civil enforcement of the statute. The legislative findings urging liberal interpretation of the statute to protect the public from inadequate contractors similarly shed little

5

light on this issue, particularly where, as here, the client has identified no harm he has suffered arising out of services that he paid for and received. See id. § 43-41-1.

The evidence at trial established that Servpro received $41,355.92 out of Ussery's insurance proceeds for services rendered in connection with repairs to his home. Servpro paid that entire amount to subcontractors who undisputedly performed work on Ussery's home, and it realized no profit in connection with this project. Ussery neither disputed Servpro's evidence that all money it had received had been paid out to subcontractors nor identified any damage to his home – or any other loss he suffered, for that matter – that was caused by Servpro or its subcontractors.

Where, as here, it is undisputed that the client has received the benefit for which he has paid and the unlicensed general contractor has received no benefit, nothing in the plain language of § 43-41-17 (b) suggests that the General Assembly intended either: (a) that the unlicensed general contractor must bear all of the costs of all benefits received by the client, in essence subjecting the contractor to punitive damages,[1] or (b) that the client is entitled to the windfall that such an outcome would

---

[1] Notably, the General Assembly has provided a criminal sanction for violating the statute. Under OCGA § 43-41-12 (a) (1), providing unlicensed general contractor services is a misdemeanor, punishable by a fine of not less than $500.00, three months' imprisonment, or both.

6

entail. See *Tolleson Lumber Co. v. Kirk*, 200 Ga. App. 689, 691 (409 SE2d 260) (1991) (a statute should be construed to "square with common sense and sound reasoning" and to avoid "unreasonable or absurd consequences not contemplated by the legislature") (citation and punctuation omitted).

We have said in addressing illegal contracts in other contexts: "[I]f an illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money." (Citation and punctuation omitted.) *Hilb, Rogal & Hamilton Co. of Atlanta, Inc. v. Holley*, 295 Ga. App. 54, 56 (1) (670 SE2d 874) (2008) (affirming grant of directed verdict to defendant on plaintiff's claim for unjust enrichment arising out of covenant not to compete in an employment contract that was unenforceable as an illegal restraint of trade). "This stems from the rule that if an illegal contract is executed it will be left to stand; if it be executory neither party can enforce it." (Citation and punctuation omitted.) Id.; accord, e.g., *Dorsett v. Garrard*, 85 Ga. 734 (11 SE 768) (1890). The General Assembly is presumed to have enacted § 43-41-17 (b) knowing of these decisions. See *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010) ("The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it.") (citation omitted).

7

On a related note, the trial court's interpretation of § 43-41-17 (b) also leads to a practical result in this case. If Ussery had not yet paid Servpro for any of the work done by its subcontractors, § 43-41-17 (b) would bar Servpro from suing Ussery to recover the amounts due for such work. By its plain terms, however, "parties other than the unlicensed contractor," i.e., Servpro's subcontractors, would then retain the right to recover compensation from Ussery for their services. OCGA § 43-41-17 (b). Under that set of facts – and given that Ussery has presented no evidence that the repair work performed by the subcontractors is worth less than what he already has paid – the parties would be in the same position as they are now: with the subcontractors having been compensated for the repairs they made to Ussery's home, Ussery having benefitted from those repairs, and Servpro receiving nothing.

Ussery relies on *Drake v. Parkman*, 79 Ga. App. 679 (54 SE2d 714) (1949), for support, but *Drake* is clearly distinguishable. In *Drake*, the plaintiff sued an unlicensed real estate broker to recover a commission paid to the broker, relying on a former statute that prohibited an unlicensed broker from enforcing a claim for "commissions, profits, option profits, or fees" arising from business done as a real estate broker or salesperson. (Citation and punctuation omitted.) Id. at 679 & 680 (2). We rejected the defendant's contention that, by barring unlicensed brokers' claims

8

for compensation, the General Assembly necessarily also had barred plaintiffs from seeking recovery of any such compensation that already had been paid. Id. at 681-682 (2). We read *Drake*, as did the trial court here, as limited to the facts and statute at issue in that case. Notably, nothing in our decision in *Drake* suggests that the plaintiff there sought the return of funds that the broker had paid to others, in return for which the plaintiff had received a benefit. Thus, the outcome in *Drake*, in which the broker was not allowed to keep his commissions, is consistent with the outcome here, in which Servpro similarly will realize no profits.

For each of the above reasons, the trial court properly determined that, on the facts of this case, Ussery is not entitled to a return of the amounts he already has paid to Servpro, which amounts Servpro has paid entirely to its subcontractors, and for which Ussery has received the benefit of the services of those subcontractors.

2. Ussery challenges the trial court's conclusion that he failed to establish damages resulting from Servpro's violation of the FBPA. We discern no error.

"The FBPA forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." (Citation and punctuation omitted.) *Small v. Savannah Intl. Motors, Inc.*, 275 Ga. App. 12, 15 (4) (619 SE2d 738) (2005). "[T]o prevail on a

private cause of action under the FBPA, a private individual must establish three elements: a violation of the Act, causation, and injury. . . . [T]he measure of damages to be applied for an FBPA violation is that of actual injury suffered." (Citation and punctuation omitted.) Id. Thus, one "cannot rely on a naked claim for nominal or general damages to sustain his cause of action." *Moore-Davis Motors, Inc. v. Joyner*, 252 Ga. App. 617, 619 (1) (556 SE2d 137) (2001).

Ussery devotes a single paragraph in his appellate brief to this enumeration of error, asserting without elaboration that: (i) he "presented evidence of the payment of $41,355.92 as his measure of damages"; and (ii) Servpro maintained a lien against his home for more than four years while seeking to recover more than $27,000 it claimed he owed. Importantly, Ussery has pointed to nothing in the record refuting the trial court's finding that he "presented no evidence whatsoever that he or his property was injured or harmed" as a result of the repairs made to his home by Servpro's subcontractors. Nor has he identified any record evidence suggesting that the value of those repairs was less than $41,355.92. He likewise has identified no evidence of any injury to him or his property that may have resulted from the existence of Servpro's lien. Consequently, he has not met his burden of showing error in the denial of relief on his FBPA claim. See *Tolbert v. Toole*, 296 Ga. 357, 363 (3)

10

(767 SE2d 24) (2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.") (citation omitted).

3. Finally, Ussery contends that the trial court erred in denying his request for attorney fees. Again, we disagree.

In the prayers for relief that followed his counterclaims, Ussery asked, without elaboration, that "he be awarded reasonable attorney fees incurred in the defense of Servpro's action and the prosecution of his counterclaim." In neither instance did he identify the statutory basis for his request. During closing argument in the bench trial, Ussery conceded that he: (i) had failed to present any evidence supporting a claim for attorney fees; and (ii) would not be entitled to a fee award if the trial court ruled against him on his counterclaims.[2] Following closing argument, Ussery asked the court to reopen the evidence to allow him to present testimony in support of his fee request. The trial court declined to do so at that time but indicated that it may revisit the issue after issuing a ruling on the merits of Ussery's counterclaims. Ussery did not thereafter file a post-judgment request for attorney fees.

_____

[2] Ussery also orally asked for permission to file a post-judgment brief to address his claim for attorney fees, although it appears that the court did not expressly rule on this request.

11

Under these circumstances, we conclude that Ussery waived any claim he may have had for attorney fees, regardless of the potential statutory basis of such request.[3] Ussery has pointed to nothing in the record supporting his conclusory assertion that a post-judgment motion for attorney fees would have been entirely "futile." Although we agree with this contention with respect to fees arising from his unsuccessful counterclaims, Ussery fails to explain why a post-judgment fee request premised on his defense of Servpro's complaint – which Servpro dismissed, apparently after concluding that its claims were barred as a matter of law – would have been futile. See, e.g., OCGA § 9-15-14 (a) (attorney fees shall be awarded against a party who has asserted a claim lacking "any justiciable issue of law or fact"), (b) (attorney fees may be awarded against a party who brought an action "that lacked substantial justification"), (e) (fees may be requested under this statute up to 45 days after final judgment). Given Ussery's waiver of this issue, this enumeration of error presents nothing for us to review. See *Employees Retirement System of Ga. v. Baughman*, 241 Ga. 339, 341 (3) (245 SE2d 282) (1978) (a claim abandoned before the trial court presents nothing for this Court to review); *9766, LLC v. Dwarf House, Inc.*, 331 Ga.

---

[3] Ussery asserts in his appellate brief that he sought attorney fees under OCGA § 9-15-14. He has identified no record evidence, however, suggesting that he brought the statutory basis for his request to the trial court's attention.

App. 287, 291 (4) (b) (771 SE2d 1) (2015) ("This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

For each of the above reasons, we affirm the judgment of the trial court.

*Judgment affirmed. Doyle, C. J., and Reese, J., concur.*