**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 25, 2022**

# In the Court of Appeals of Georgia

A21A1715. STOCKTON v. SHADWICK et al.

MARKLE, Judge.

V. Douglas Stockton appeals from the trial court's order dismissing his complaint against V. Jack Shadwick and Fred Alexander Amusement Company, Inc. (collectively "Shadwick"). On appeal, Stockton asserts that (1) the trial court erred by granting Shadwick's motion to dismiss based on its finding that (a) the parties' business agreement, which predated OCGA § 50-27-87, the statute which now governs bona fide coin-operated amusement machines (COAMs), was void and unenforceable both prior to and after the statute's enactment; (b) Stockton could not be an "operator" under OCGA § 50-27-87 and other relevant statutes; and (2) the trial court erred by dismissing his claims for (a) unjust enrichment, (b) conversion; (c)

breach of fiduciary duty; and (d) attorney fees under O.C.G.A. § 13-6-11. For the following reasons, we affirm.

> We apply a de novo standard of review to a trial court's grant of a motion to dismiss. A motion to dismiss for failure to state a claim should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Stewart v. Johnson*, 358 Ga. App. 813, 818 (4) (856 SE2d 401) (2021). Where, as here, a case turns on statutory interpretation and resolution of questions of law, we apply a de novo standard of review. *Amazing Amusements Group v. Wilson*, 353 Ga. App. 256 (835 SE2d 781) (2019).

So viewed, the record shows this case stems from a joint-venture business dispute and the sharing of revenues in which Stockton claims Shadwick owes him approximately $175,000 from COAMs Stockton had at Fred Alexander Amusement Company (FAAC), which Shadwick owned.

COAMs are highly regulated and subject to the authority of the Georgia Lottery Corporation (GLC), which requires that any owner of a COAM made available for

public use must have a COAM master license. Before 1998, both Shadwick and Stockton each ran their own COAM businesses, and each had their own master license. Sometime thereafter, the parties decided to combine their businesses, with Stockton providing the locations for the machines and Shadwick providing all of the COAMs and paying all of the expenses.

Later, Stockton opted not to renew his master license, and the parties agreed to operate their COAMS solely under FAAC's master license. In 2009, the parties orally agreed to share in the cost and expenses of the business and equally divide the revenue and profits therefrom. Despite this arrangement, however, Stockton admits that he had no legal interest in FAAC as either an officer, director, or shareholder.

The parties operated under this business agreement for many years, until 2017, when Shadwick stopped paying Stockton the 50 percent profit and eventually ceased paying him his share of the revenues altogether; rather, Shadwick used Stockton's share of the profits to pay his personal debts.

Stockton then filed a verified complaint, asserting claims for breach of contract; breach of fiduciary duty; unjust enrichment; conversion; appointment of a

receiver; and attorney fees under OCGA § 13-6-11.[1] Shadwick answered, and subsequently filed a motion to dismiss the complaint for failure to state a claim, alleging that the business arrangement between the parties was illegal and unenforceable under OCGA § 50-27-87. The trial court granted Shadwick's motion and dismissed Stockton's complaint with prejudice, finding that the arrangement was illegal and void, and Stockton was not entitled to the revenue because he was not an "operator" or "master licensee" as required by OCGA § 50-27-87 and related statutes.

Stockton moved the trial court to reconsider, and it subsequently issued an order denying the motion, but clarified that the parties' alleged contract was unenforceable because it was incapable of being brought into compliance with current COAM laws enacted in 2013; Stockton's claims for breach of fiduciary duty, conversion, and unjust enrichment fail because these claims all arose from the same alleged illegal contract; and, consequently, the dependent claim for attorney fees failed as well. Stockton now appeals.

1. In related arguments, Stockton first asserts the trial court erred by granting Shadwick's motion to dismiss based on its finding that (a) the parties' business

---

[1] Along with his complaint, Stockton also sought a temporary restraining order to safeguard the assets at issue from depletion or destruction during the pendency of the case. The trial court granted the motion and we affirmed.

agreement was void and unenforceable both prior to and after the enactment of OCGA § 50-27-87; and (b) Stockton was not an "operator" entitled to revenue and profits under the plain language of the relevant statutes. We examine each claim in turn, concluding that the trial court properly determined that the parties' business arrangement was illegal and thus void.

(a) *The agreement was illegal and void under COAM laws.*

Stockton argues that there was no statute addressing the parties' business arrangement at the relevant time of their agreement, and that there was no requirement to bring their agreement into compliance with current COAM laws. Stockton relies on *All Star v. Ga. Atlanta Amusements*, 332 Ga. App. 1, 9 (770 SE2d 22) (2015), contending that there was no requirement that the parties amend or modify their agreement to bring it into compliance with the new law because doing so would result in neither party receiving funds derived from the business; thus, such a requirement would vitiate the contract all together. We are unpersuaded.

This argument is unavailing because Stockton concedes the alleged breach did not occur until 2017, well after the statute took effect. As for Stockton's reliance on *All Star*, we specifically held therein that

5

parties who contract with respect to a regulated industry or enterprise enter those contracts subject to further, reasonable regulation; when the subject of the contract is regulated, this fact controls, to some extent, the parties' reasonable expectations under the contract. In essence, such parties are presumed to contract with the knowledge that, regardless of the terms they agree to, subsequent reasonable regulation might require them to amend one or more of those terms.

(Citations and punctuation omitted.) 332 Ga. App. at 9. As such, in keeping with *Allstar*, Stockton's agreement with Shadwick must conform to the COAM statutory framework in order to be legal and enforceable. Id. As discussed more fully below, we conclude that it does not.

Stockton also argues that the parties' agreement to form a profit-sharing partnership or joint venture does not violate the statute. We thus consider whether the parties' agreement complies with the statutory framework enacted by the General Assembly, and conclude that it does not.

Ownership and operation of a COAM business is a highly regulated industry in Georgia, and the General Assembly has clearly indicated that "the ability to operate a bona fide [COAM business] in this state constitutes a privilege and not a right." OCGA § 50-27-70 (a). To determine if the parties' agreement is enforceable, we

6

apply our rules of statutory construction, and give the ordinary meaning to the statutory language governing COAM businesses.

> Our interpretation and application of statutory language is guided by the following principles: A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

(Citations and punctuation omitted.) *PTI Royston v. Eubanks*, 360 Ga. App. 263, 266 (1) (861 SE2d 115) (2021); see also *Amazing Amusements Group*, 353 Ga. App. at 257-258. Furthermore,

> statutes relating to the same subject matter are in pari materia and must be construed together and harmonized whenever possible. In so construing, . . . we apply the fundamental rules of statutory construction that require us . . . to avoid a construction that makes some language

7

mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations and punctuation omitted.) *Daily Underwriters of America v. Williams*, 354 Ga. App. 551, 554 (2) (a) (i) (841 SE2d 135) (2020) (physical precedent only).

A review of the relevant COAM statutes and rules makes clear that they prohibit the agreement between Stockton and Shadwick. OCGA § 50-27-87 (c), the statute governing COAM revenue sharing agreements, mandates

> [n]o person shall receive a portion of any proceeds or revenue from the operation of a bona fide coin operated amusement machine except the operator, location owner, or location operator[.]

OCGA § 50-27-70 (12) defines "operator" as

> any person, individual, firm, company, association, corporation, or other business entity that exhibits, displays, or permits to be exhibited or displayed, in a place of business other than his own, any bona fide coin operated amusement machine in this state.

A location owner or operator is defined as "an owner or operator of a business where one or more bona fide coin operated amusement machines are available for commercial use and play by the public." OCGA § 50-27-70 (8). Further, COAM law clearly indicates that, unless one is a manufacturer or distributor of COAMs, "a

8

person shall not *own*, maintain, *place*, or lease a bona fide coin operated amusement machine unless he or she has a valid master license[.]" (Emphasis supplied.) OCGA § 50-27-87 (a) (1) (emphasis supplied). Thus, every owner or operator of a COAM in this state must purchase and display a master license in his place of business where the machine is located for commercial or public use in order to legally operate and collect the resulting profits. OCGA § 50-27-70 (10); see also OCGA § 50-27-70 (10.1) (a master licensee is defined as "any person that has lawfully applied for and received a master license."). Finally,

> [n]o bona fide coin operated amusement machine, its parts, or software or hardware shall be *placed* or leased in any location owner's or location operator's establishment *except by a master licensee* and only if the owner or agent of the location owner or location operator has entered into a written agreement with a master licensee for placement of the bona fide coin operated amusement machine.

(Emphasis supplied.) OCGA § 50-27-87 (b) (1).

Here, Stockton alleged in his complaint that, prior to the parties' agreement, he had his own COAM master license, and that, under the agreement, he provided all of the locations for the placement of the COAMs. Further, Stockton admits that, some time prior to 2009, he did not renew his master license, and thus he did not possess

one during the relevant portion of the parties' agreement. His claims, however, are premised on an agreement to equally divide the revenue and profits from the COAM business.

But under the plain language of these statutory provisions, Stockton cannot own, operate, or place a COAM, nor can he share in the revenue and profits thereof, unless he himself possesses a master license. And, despite Stockton's contention that there is "nothing illegal" about the parties' use of FAAC as the master licensee, the law plainly does not sanction such an arrangement, and Stockton directs us to no authority suggesting otherwise. Rather, the relevant statutes require *all* parties to such a profit-sharing agreement to possess a master license. See OCGA §§ 50-27-70 (8), (10), (10.1); 50-27-87 (a) (1), (b) (1). Because Stockton has admitted that he did not hold a master license during the relevant time, the arrangement is illegal under COAM laws. See OCGA § 50-27-87 (a) (1), (b) (1), (c).[2]

Georgia courts will not enforce a contract that is illegal and against public policy. See OCGA § 13-8-1 ("A contract to do an immoral or illegal thing is void.");

---

[2] To the extent Stockton argues in his reply brief that FAAC, as the holder of the master license, could have paid him monies derived from the COAM revenues, this argument fails because, as discussed here, Stockton is not an owner, operator, or holder of a master license, and thus cannot share in COAM proceeds. See OCGA §§ 50-27-70 (10), (10.1); 50-27-87 (a) (1), (c).

10

see also *Innovative Images v. Summerville*, 309 Ga. 675, 684 (3) (a) (848 SE2d 45) (2020) ("a contract is void as against public policy when the agreement itself effectuates illegality"); *Minor v. McDaniel*, 210 Ga. App. 146, 147 (435 SE2d 508) (1993) ("A court of justice will not lend its aid to the enforcement of any contract the making of which is prohibited, nor to the enforcement of anything necessary to complete the accomplishment of an unlawful purpose. If the illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money back.") (citations and punctuation omitted). The General Assembly has enacted these regulations "to prevent the unregulated operation of [COAM businesses,]" to "aid in the enforcement of the tax obligations that arise from the operation of [COAM businesses,]" to "prevent unauthorized cash payouts[,]" and "to safeguard the fiscal soundness of the state, enhance public welfare, and support the need to educate Georgia's children through the HOPE scholarship program and pre-kindergarten funding[.]"). OCGA § 50-27-70 (a). Thus, the arrangement here is against public policy, and Stockton's argument fails.

(b) *Stockton was not an operator.*

Stockton further argues that the trial court erred by finding that he was not entitled to the profits as an operator under the relevant statutes and rules. Specifically,

11

Stockton argues that his status as an operator, even without holding a master license, entitles him to receive proceeds from the operation of the COAM business. He asserts that, in accordance with the definition of an operator under OCGA § 50-27-70 (12) and the GLC's rules, he was providing locations for the COAMs, but he did not own the locations. He further argues that the term "operator" is not synonymous with "master licensee." We disagree and conclude that the trial court properly determined that Stockton was not an operator entitled to share in the proceeds of the COAM business.

As discussed in Division 1 (a), Stockton cannot qualify as an operator if he is not a master licensee. See OCGA § 50-27-70 (12). Here, Stockton did not allege in his complaint that he was an operator in the context of exhibiting or displaying the COAMs, or that he owned any of the COAMs. Instead, he asserted that he provided all of his locations for placement of the COAMs. But, Georgia law is clear that a person cannot place a COAM unless he or she has a valid master license. See OCGA § 50-27-87 (a) (1). Likewise, no COAM can be placed in any location owner's or location operator's establishment except by a master licensee. See OCGA § 50-27-87 (b) (1).

12

In addition, the GLC rules treat the terms "operator" and "master license holder" as synonymous.[3] As such, and in keeping with the rules of statutory construction, it is clear from the relevant statutes and GLC rules that, in order for Stockton to be an operator, he must also be a master licensee. See *Amazing Amusements Group*, 353 Ga. App. at 257 (we review the text in its most natural and reasonable way, giving it its plain and ordinary meaning); see also *Daily Underwriters of America*, 354 Ga. App. at 554 (2) (a) (i) (physical precedent only) ("statutes relating to the same subject matter are in pari materia and must be construed together and harmonized whenever possible. In so construing, . . . we apply the fundamental rules of statutory construction that require us . . . to avoid a construction that makes some language mere surplusage.") (citation omitted). Because Stockton admits that he did not possess a master license, he cannot show that he is an operator within the meaning and framework of the relevant statutes nor the GLC rules. Thus,

---

[3] Significantly, GLC Rule 13.1.2 acknowledges that they are one and the same in its definition of "operator (*or Master License holder under the Act*)." See Georgia Lottery Corporation RU 13.1.2 available at https://www.gacoam.com/Documents (COAM Laws, Rules & Regulations) (last visited February 10, 2022).

13

Stockton is not entitled to share in the proceeds and revenues of the COAM business at issue, and the trial court properly dismissed his claims.[4]

2. Stockton next argues that the trial court erred in dismissing his claims for unjust enrichment, conversion, breach of fiduciary duty, and attorney fees. We examine each contention separately.

(a) *Unjust enrichment.*

Stockton argues that, even if the parties' business agreement was contrary to law, he is entitled to recover half the costs and expenses of the COAM venture because he conferred a benefit on Stockton. We disagree.

We have repeatedly held that "[i]f an illegal contract be in part performed and money has been paid in pursuance of it, no action will lie to recover the money."

---

[4] To the extent Stockton argues in his reply brief that he could produce evidence showing he was an operator because he was, in effect, an employee of FAAC, we are not convinced. First, Stockton conceded in his complaint that he was not an employee, officer, or shareholder of FAAC. Second, because Stockton raises this argument for the first time in his reply brief, we do not consider it. *Stewart*, 358 Ga. App. at 814. Also, Stockton raises for the first time in his reply brief that the trial court should have allowed him to amend his complaint to set forth additional facts as to why he qualified as an operator. But, the record fails to show that Stockton raised this argument before the trial court below, and thus we do not consider it. See *Cockerham v. Cockerham*, 359 Ga. App. 891, 893 (1) (860 SE2d 163) (2021).

14

(Citation and punctuation omitted.) *Ussery v. Goodrich Restoration*, 341 Ga. App. 390, 393 (1) (800 SE2d 606) (2017).

> If, as in this case, an express agreement is unenforceable because it violates public policy, the agreement can not be made legal and binding as an implied contract, by merely praying for a recovery on quantum meruit of a portion of the amount expressly agreed upon. If the express contract was void because contrary to public policy, the implied promise was void in its inception.

(Citation and punctuation omitted.) *JR Constr./Electric v. Ordner Constr.*, 294 Ga. App. 453, 455 (669 SE2d 224) (2008). "This stems from the rule that if an illegal contract is executed it will be left to stand[.] . . . The law will leave the parties where they place themselves, not for the sake of the defendant, but for the law's sake, and that only." (Citation and punctuation omitted.) *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 56 (1) (670 SE2d 874) (2008), disapproved of on other grounds by *Rockdale Hosp. v. Evans*, 306 Ga. 847 (834 SE2d 77) (2019); see also *Everett v. Goodloe*, 268 Ga. App. 536, 541 (1) (b) (602 SE2d 204) (2004).

In his equitable claim for unjust enrichment, Stockton alleged that he conferred a benefit upon Shadwick and/or FAAC by paying half the costs and expenses of the COAM business. He further contends that "Shadwick and/or FAAC reasonably knew

or should have known that Stockton expected to be paid one-half of the total revenues for the jointly operated COAM locations[,]" and that Shadwick and/or FAAC will be unjustly enriched at [his] expense if they are not required to compensate him for the benefit he conferred upon them."

Generally, under the standard of review on a motion to dismiss, it may be possible for a plaintiff to present evidence of expenses. *Stewart*, 358 Ga. App. at 818 (4). In essence, however, the relief Stockton seeks here is not recoupment of his expenses, but compensation for monies paid in pursuit of an illegal agreement and recovery of half the revenues realized from that illicit undertaking.

In this regard, we are unpersuaded by Stockton's reliance on *McCondichie v. Groover*, 261 Ga. App. 784 (584 SE2d 57) (2003). In *McCondichie*, the plaintiff asserted an unjust enrichment claim seeking to recover from the defendant money he paid under a failed oral agreement for the defendant to purchase stock on the plaintiff's behalf. Id. at 785. There, we concluded that "[a]lthough [the plaintiff] is not entitled to the benefit of his bargain, he is not barred from recovering the money deposited under the invalid agreement." Id. at 785 (4). We ultimately reversed the trial court's dismissal of the plaintiff's unjust enrichment claim, allowing him to seek recovery of the funds he deposited with the defendant under the equitable theory of

16

money had and received. Id. This is not the scenario here, as Stockton is not seeking the return of money had and received, but rather he seeks to recover the benefit of an unlawful bargain. Because the contract is illegal, as discussed in Division 1 (a), such recovery cannot lie. See *Ussery*, 341 Ga. App. at 393 (1); *Hilb*, 295 Ga. App. at 56 (1); *JR Constr./Electric*, 294 Ga. App. at 455. Accordingly, the trial court did not err in dismissing Stockton's unjust enrichment claim.

(b) *Conversion*.

Stockton also argues that the trial court erred by dismissing his claim for conversion of the COAM revenues he was entitled to receive because they were specific and identifiable by examining Shadwick's business records, and this claim remained viable even if the agreement was otherwise illegal or void. We disagree.

In order to state a claim for conversion, Stockton must show

(1) title to the property or the right of possession; (2) actual possession in the other party; (3) demand for return of the property; and (4) refusal by the other party to return the property.

(Citations and punctuation omitted.) *Bearoff v. Craton*, 350 Ga. App. 826, 840 (5) (a) (830 SE2d 362) (2019); see also *Rubenstein v. Palatchi*, 359 Ga. App. 139, 142 (1) (857 SE2d 81) (2021). Also, a " tort claim for conversion cannot be based on the

17

breach of a contractual duty alone." *ULQ v. Meder*, 293 Ga. App. 176, 181 (3) (666 SE2d 713) (2008). Stockton failed to satisfy these elements.

Stockton asserts in his complaint that he is entitled to half the revenue generated from the COAM business based on his contractual agreement with Shadwick. As discussed above, Stockton cannot show entitlement or a right to money realized from an illegal agreement. Thus, his claim fails on the first prong of a conversion claim. See *Bearoff*, 350 Ga. App. at 840 (5) (a). Similarly, Stockton's claim is based entirely on an alleged breach of an unenforceable contract. See *ULQ*, 293 Ga. App. at 181 (3). Accordingly, the trial court did not err in dismissing Stockton's conversion claim.

(c) *Breach of fiduciary duty.*

Stockton further argues that the trial court erred by dismissing his breach of fiduciary duty claim because he alleged a joint venture or partnership with Shadwick. We discern no error.

> To establish a tort claim for breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach.

18

(Citation and punctuation omitted.) *Wimpy v. Martin*, 356 Ga. App. 55, 57 (1) (a) (846 SE2d 230) (2020). As the party asserting the existence of a fiduciary or confidential relationship, Stockton bears the burden of establishing its existence. See *Duncan v. Rawls*, 359 Ga. App. 715, 722 (2) (859 SE2d 857) (2021).

Here, as alleged in his complaint, Stockton's entire breach of fiduciary duty claim is premised on an illegal and unenforceable joint business agreement between him and Shadwick to share in the COAM revenues. Without more, Stockton's breach of fiduciary duty claim fails. See *Burson v. Milton Hall Surgical Assoc.*, 343 Ga. App. 159, 168-169 (3) (806 SE2d 239) (2017) (reversing trial court's denial of motion to dismiss fiduciary duty claim, finding no breach of restrictive covenant for making plans to start rival business while still employed). As such, this argument fails.

(d) *Attorney fees.*

Finally, Stockton asserts the trial court erred by dismissing his claim for attorney fees under OCGA § 13-6-11. Because attorney fees under OCGA § 13-6-11 are ancillary and recoverable only if Stockton prevails on the other underlying claims,

which he has not, the trial court properly dismissed this claim as well. See *Security Real Estate Svcs. v. First Bank of Dalton*, 325 Ga. App. 13, 14 (752 SE2d 127) (2013).

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur*.